## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARVIN ROBERTSON, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1453** |
| **BLANCHARD CONTRACTORS, INC., et al.** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court is Defendant Blanchard Contractors, Inc's ("Blanchard") Motion for Summary Judgment,[1] in which Blanchard contends that there is no genuine issue of material fact that Blanchard owed Plaintiff Marvin Robertson, Sr. ("Plaintiff") a duty of care sufficient to support Plaintiff's negligence action and, further, contends that Plaintiff was a borrowed servant of Blanchard at the time of Plaintiff's alleged injury, such that Plaintiff is barred from bringing tort claims against Blanchard. Having considered the motion, the response, the reply, the record, and the applicable law, for the following reasons, the Court will deny the motion.

## I. Background

This case arises from an alleged accident that occurred on July 17, 2010 on a fixed platform owned by Hilcorp Energy, GOM, LLC ("Hillcorp"), which is located on the Outer Continental Shelf adjacent to Louisiana in the Gulf of Mexico. Plaintiff was working on the platform as a scaffolding builder. Hilcorp had engaged several companies for various tasks on the platform; one of those companies was Blanchard, which had in turn subcontracted with Gulf South Scaffolding, Inc. ("Gulf South") for the construction and daily safety inspections of scaffolding aboard the platform. At all

---

[1] Rec. Doc. 65.

1

relevant times, Plaintiff was employed by Gulf South. However, Blanchard contends that Plaintiff was only "nominally" employed by Gulf South.[2]

Regarding the incident in question, Plaintiff alleges that, while walking aboard a lower deck of scaffolding after retrieving his supervisor's carpenter's level, he tripped over a piece of stainless steel tubing that had become wedged between scaffolding boards. Further, Plaintiff alleges that he attempted to grab onto a handrail as he fell but that his hand slipped off of the railing due to the presence of a "slippery substance."[3] According to Plaintiff, immediately prior to the accident, Blanchard employees were on the platform above the scaffolding where Plaintiff fell and the employees were washing pipe with detergent and water. Plaintiff contends that the water and detergent used by the Blanchard employees caused the handrail near the scaffolding to be slippery.

Plaintiff filed suit in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana, against Blanchard, alleging negligence for failing to warn of the tubing and failing to maintain a safe work area.[4] On the basis of federal question jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"),[5] Blanchard removed the suit to this Court.[6] By his First Supplemental and Amending Complaint of July 18, 2011, Plaintiff added additional defendants, including defendant Instrumentation & Electrical Technologies, LLC ("I&E"), and alleged those defendants' concurrent negligence.[7] Additionally, Plaintiff's employer, Gulf South, intervened to recover

---

[2] Rec. Doc. 65-2 at p. 1.

[3] *See* Rec. Doc. 65-3 at p. 11.

[4] Petition for Damages, Rec. Doc. 1-1.

[5] 43 U.S.C. § 1333 *et. seq.*

[6] Rec. Doc. 1.

[7] Rec. Doc. 13.

workers' compensation benefits paid to Plaintiff pursuant to the Longshore and Harbor Worker's Compensation Act ("LHWCA").[8]

On February 23, 2012, co-defendant I&E filed a motion for summary judgment,[9] arguing that under Louisiana law, I&E owed no duty to Plaintiff sufficient to support Plaintiff's negligence action. On June 25, 2012, this Court denied I&E's motion.[10]

On April 17, 2012, Blanchard filed the instant motion for summary judgment, contending that there are no genuine issues of material fact that Blanchard did not owe Plaintiff a duty of care, and that, even if such a duty existed, Plaintiff is barred from bringing this tort claim because he was a borrowed servant of Blanchard.[11] Plaintiff filed his response in opposition on May 1, 2012.[12] On May 11, 2012, Blanchard filed a reply with leave of Court.[13]

## II. The Parties' Arguments

The pending motion for summary judgment argues that there is no genuine issue of material fact for the jury to decide, because (1) Blanchard did not owe Plaintiff a "legal duty to ensure the safety of the scaffolding in question;"[14] and (2) even if such a duty were owed, Plaintiff was the

---

[8] Rec. Doc. 22.

[9] Rec. Doc. 47.

[10] Rec. Doc. 83.

[11] Rec. Doc. 65.

[12] Rec. Doc. 67.

[13] Rec. Doc. 73.

[14] Rec. Doc. 65-2 at p. 6. Blanchard incorporates by reference the arguments set forth in I&E's motion for summary judgment relating to the absence of a legal duty on the part of I&E to ensure the safety of the scaffolding. *See id.* (citing Rec. Doc. 47-1 at pp. 6-7).

borrowed servant of Blanchard and is therefore "barred from bringing tort claims against Blanchard by the exclusive remedy provision of the LHWCA."[15]

## A. *Existence of a Legal Duty*

First, Blanchard contends that there is no genuine issue of material fact that Blanchard did not owe Plaintiff a duty of care sufficient to support Plaintiff's negligence action, because Plaintiff "has testified that Gulf South rather than Blanchard, was responsible for maintaining the scaffolding in a non-hazardous state."[16] Blanchard asserts that "[t]here has been absolutely no evidence to date that Blanchard was the source of the steel tubing over which plaintiff fell. Indeed, Robertson testified that he never saw Blanchard working with steel tubing on the platform."[17] Blanchard incorporates the arguments set forth in I&E's earlier motion for summary judgment,[18] wherein I&E does not specifically address the other necessary elements of a negligence claim under Louisiana law, instead noting that "[s]ince Robertson cannot prove that I&E owed him a legal duty, the plaintiff cannot fulfill all of the elements of a negligence cause of action against I&E."[19] Likewise, Blanchard argues that it owed no legal duty to ensure the safety of the scaffolding.[20]

Plaintiff's response in opposition to the motion for summary judgment asserts that Blanchard had a duty "to conduct their work activities in such a manner that they did not expose other platform

---

[15] Rec. Doc. 65-2 at p. 17.

[16] *Id.* at p. 6.

[17] *Id.* at pp. 5-6 (citing Ex. A at p. 131, lns. 3-5).

[18] *Id.* at p. 6 (citing Rec. Doc. 47-1 at pp. 6-7).

[19] *Id.* at p. 6.

[20] *Id.*

4

workers to an unreasonable risk of harm."[21]  In fact, Plaintiff avers that "[g]enerally, there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances."[22]  Plaintiff notes that by arguing that no duty existed simply because someone else was charged with maintaining the safety of the scaffolding, Blanchard ignores its responsibility for its own conduct pursuant to the duty imposed on every individual by Louisiana's general negligence statute, Louisiana Civil Code Article 2315.[23] Specifically, Plaintiff argues that Blanchard "clearly had a duty to conduct their construction activities in such a manner that they did not allow soapy water to be poured on handrails near the scaffolding."[24]  Plaintiff notes that whether Blanchard breached this duty and whether that breach caused Plaintiff's injuries by making him unable to break his fall are questions of fact to be resolved at trial.[25]  Thus, Plaintiff contends that this Court must deny Blanchard's motion for summary judgment because Blanchard's negligent actions in allowing soapy water to be poured on the handrails near the scaffolding created an unreasonable risk in violation of Blanchard's general duty of care under the Louisiana Civil Code Article 2315.[26]

### B.  Borrowed Servant Status

The parties agree that Plaintiff was injured on the Outer Continental Shelf, and Section

---

[21] Rec. Doc. 67 at p. 6.

[22] *Id.* (citing *Boykin v. Louisiana Transit Co.*, 96-1932 (La. 3/4/98) 707 So.2d 1225).

[23] *Id.* at pp. 6-7.

[24] *Id.* at p. 7.

[25] *Id.*

[26] *Id.* at pp. 6-7.

1333(b) of the OCSLA incorporates and extends the benefits of the LHWCA to employees injured on fixed platforms on the Outer Continental Shelf.[27]  The parties further agree that under the LHWCA, employees are prevented from bringing tort actions against their employers and their recovery is limited to certain statutorily prescribed compensation benefits.[28]  Because a borrowing employer enjoys the same protection as a nominal employer, a "borrowed employee" (also referred to as "borrowed servant") is also barred from suing the borrowing employer for anything more than workers' compensation benefits.[29]  Thus, if Plaintiff is found to be a "borrowed employee" of Blanchard, then he will be barred from suing Blanchard in tort.  Although the parties dispute whether Plaintiff was a borrowed employee at the time of his injury, both parties agree that whether an employee is a borrowed employee constitutes an issue of law for the Court to decide[30] by applying the nine factor test set forth by the United States Court of Appeals for the Fifth Circuit in *Ruiz v. Shell Oil Co.*[31]  However, Plaintiff suggests that "[i]f some of the factors involve a factual dispute those factors must be submitted to the jury, unless a sufficient number of the other factors clearly favor summary judgment."[32]

The nine factors set forth in *Ruiz* are: (1) whether the borrowing employer had control over the employee; (2) whose work is being performed at the time of the injury; (3) whether there was

---

[27] Rec. Doc. 65-2 at p. 7 (citing 43 U.S.C.A. § 1333(b)); Rec. Doc. 67 at p. 7 (citing 43 U.S.C.A. §1333(b)).

[28] *See* Rec. Doc. 65-2 at p. 7 (citing 33 U.S.C.A. § 933(i)); Rec. Doc. 67 at p. 7 (citing 33 U.S.C. §905(a)).

[29] *See* Rec. Doc. 65-2 at p. 7 (citing *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1243 (5th Cir. 1988)); Rec. Doc. 67 at p. 7 (citing *West v. Kerr-McGee Corp.*, 765 F.2d 256 (5th Cir. 1985)).

[30] Rec. Doc. 65-2 at p. 7 (citing *Melancon*, 834 F.2d at 1238); Rec. Doc. 67 at p. 8 (citing *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615 (5th Cir. 1986)).

[31] Rec. Doc. 65-2 at p. 7 (citing *Ruiz*, 413 F.2d 310, 310 (5th Cir. 1969)); Rec. Doc. 67 at p. 8 (citing *id.*).

[32] Rec. Doc. 67 at p. 8.

an understanding or agreement between the original employer and the borrowing employer; (4) whether the employee acquiesced in the new work situation; (5) whether the original employer terminated its relationship with the employee; (6) whether the borrowing employer furnished the tools and place of performance; (7) whether the new employment was over a considerable length of time; (8) whether the borrowing employer had the right to discharge the employee; and (9) whether the borrowing employer paid the employee.[33] The parties agree that of these nine factors, no single factor is decisive.[34]

### 1. Who Has Control Over the Employee?

Both parties explain that in "considering whether the power exists to control and direct a servant, a careful distinction must be made between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a large undertaking."[35]

Blanchard contends that it had authoritative direction and control over Plaintiff and Nicholas Alonso ("Alonso"), the only two Gulf South employees on the platform at the time of the accident, through Blanchard's superintendent, Randy Picard ("Picard"). In support of Blanchard's position, it notes that Plaintiff's contact with Gulf South was through Picard; that Picard supervised the work performed on the platform and gave Plaintiff and Alonso work assignments directly; that Plaintiff

---

[33] *Id.* (citing 413 F.2d at 310).

[34] Rec. Doc. 65-2 at p. 7 (citing *Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 (5th Cir. 1993)); Rec. Doc. 67 at p. 8 (citing *Brown*, 984 F.2d 674).

[35] Rec. Doc. 65-2 at p. 8 (citing *Ruiz*, 413 F.2d at 313 (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215 (1909))); Rec. Doc. 67 at p. 10.

turned timesheets in daily to Picard for his signature; that Plaintiff participated in a safety meeting led by Blanchard contractors each morning; that Picard had the authority to direct Plaintiff's work and gave specific instructions as to where scaffolding was to be built; and that Plaintiff assisted Blanchard with other tasks such as rigging, hanging pipe, and general housekeeping.[36]  Blanchard further elaborates, in its reply, that it is of no legal consequence that Blanchard did not have the expertise in scaffolding[37] or that Blanchard did not direct each and every action of [Plaintiff]."[38] Therefore, Blanchard avers that it had control over Plaintiff, and this factor strongly supports a finding that Plaintiff was the borrowed servant of Blanchard.

In his opposition, Plaintiff maintains that Gulf South was responsible for construction of the scaffolding, and Plaintiff "concedes that the safe construction of the scaffolding was the responsibility of Marvin Robertson and his Gulf South supervisor, Nicholas Alonso."[39]  Thus, Plaintiff argues, it must logically follow from Gulf South's responsibility for the safe construction of the scaffolding, that Blanchard had "no authoritative direction or control over the Gulf South scaffolding crew."[40]  Plaintiff argues that Gulf South had the expertise in scaffolding construction, and Plaintiff worked under the supervision of a Gulf South foreman, Alonso, not Blanchard's superintendent Picard.  According to Plaintiff, "the only supervision [Picard] exercised over the Gulf

---

[36] Rec. Doc. 65-2 at pp. 8-9.

[37] Rec. Doc. 73 at p. 3 (citing *Standard Oil Co.*, 212 U.S. at 221).

[38] *Id.* (citing *Hitt v. Cliffs Drilling Co.*, No. 92-2954, 1993 WL 488570, at *4 (E.D. La. Nov. 22, 1993) (Livaudais, J.)).

[39] Rec. Doc. 67 at p. 9.

[40] *Id.* at p. 9.

South work crew was to tell them where the scaffold was to be placed on the platform."[41]  Therefore, Plaintiff contends that this factor weighs against finding he was a borrowed employer because Blanchard "merely made suggestions as to the necessary co-operation needed so that the scaffold could be constructed in a position where it would best facilitate the work of the Blanchard construction crew."[42]

### 2. Whose Work Was Being Performed?

Blanchard argues that the scaffolding was being built to allow Blanchard to refurbish the platform pursuant to a contract between Blanchard and Hilcorp, and as such, the work being performed was that of Blanchard.[43]  Blanchard explains that this factor examines "whether the work done by the employee promotes the operations of the putative borrowing employer,"[44] and emphasis should be placed on whether "it was primarily the borrowing principal's interests that were being furthered by the employee's work."[45]  Here, Blanchard contends that because Plaintiff's main job was to erect scaffolding "to facilitate the work of the Blanchard construction crew" in refurbishing the platform, Plaintiff's work furthered Blanchard's principal interest."[46]  In further support of Blanchard's position that Plaintiff was performing its work, Blanchard notes that Plaintiff also

---

[41] *Id.* at p. 10.

[42] *Id.*

[43] Rec. Doc. 65-2 at p. 9.

[44] Rec. Doc. 73 at pp. 4-5 (quoting *Allen v. Texaco*, No. 99-1456, 2001 WL 611391, at *4 (E.D. La. June 5, 2001) (Vance, C.J.)).

[45] *Id.* at p. 5 (quoting *Langfitt v. Federal Marine Terminals, Inc.*, 647 F.3d 1116 (11th Cir. 2011)).

[46] Rec. Doc. 65-2 at p. 10; Rec. Doc. 73 at p. 5.

assisted in other tasks "such as rigging and hanging pipe which promoted the operations of Blanchard."[47]

Plaintiff's opposition argues that Gulf South was in the business of leasing and constructing scaffolding equipment, and Plaintiff's work activities on the platform contributed to Gulf South's scaffolding business. Furthermore, Plaintiff maintains that he did not engage in any activity that contributed to Blanchard's construction work.[48] Accordingly, Plaintiff urges that this factor weighs against a finding that Plaintiff was a borrowed employee, because there was a clear distinction between the construction work performed by Blanchard's construction crew and the work performed by the Gulf South employees in furtherance of Gulf South's scaffolding business.[49]

### 3. Was There an Agreement or Understanding Between the Original and Borrowing Employers?

According to Blanchard, even absent a formal written contract between the borrowing employer and the nominal employer, "[a] tacit understanding or 'meeting of the minds' alone is sufficient."[50] Therefore, "[a] finding of borrowed servant status is supported where there is an expectation on behalf of the management and employees of the lending employer that its employees will be receiving instruction from another employer."[51] Blanchard argues that Gulf South and

---

[47] Rec. Doc. 65-2 at p. 10; *see also id.* at p. 3 (citing Gulf South Scaffolding Time Sheets, Ex. B).

[48] Rec. Doc. 67 at p. 11 (citing Picard Dep., Ex. C, pp. 25-26).

[49] *Id.*

[50] Rec. Doc. 65-2 at p. 10 (quoting *Foreman v. Danos & Curole Marine Contractors, Inc.*, 772 So.2d 1, 6 (La. App. 1st Cir. 1998),

[51] *Id.*

10

Blanchard had a meeting of the minds as evidenced by the fact that Picard had the authority to evaluate, assess, and supervise Plaintiff's performance on the platform, and if Picard felt Plaintiff's work was unsatisfactory he would simply call Gulf South's onshore offices and have Plaintiff replaced.[52] Blanchard argues that its position is further supported by evidence that all contact between Plaintiff and Gulf South was through Picard, and Blanchard "felt free to assign Robertson to tasks in addition to building scaffolding."[53]

Plaintiff argues that "there is no evidence which establishes a tacit 'meeting of the minds' between Blanchard and Gulf South."[54] Plaintiff contends that, to the contrary, the evidence indicates that Gulf South employees were not performing scaffolding work under the supervision of Blanchard, as Plaintiff and Alonso were the "experts" in scaffolding construction. Furthermore, Gulf South maintained sufficient control and contact with Plaintiff's work crew to refute the argument that there was a meeting of the minds.[55]

In its reply, Blanchard asserts that the evidence Plaintiff relies on to establish that there was no expectation on behalf of Gulf South that Plaintiff would be receiving instructions from Blanchard[56] only demonstrates that Plaintiff maintained a relationship with Gulf South "outside of the work to be performed on the [] platform."[57] Blanchard reiterates that there was a meeting of the

---

[52] *Id.* at pp. 10-11; Rec. Doc. 73 at p. 6.

[53] *Id.*

[54] Rec. Doc. 67 at p. 11.

[55] *Id.* at p. 12 (Plaintiff lists nine facts portraying the continued contact between Plaintiff and Gulf South, which primarily relate to compensation, benefits, and scheduling).

[56] *See id.*

[57] Rec. Doc. 73 at p. 6.

minds with Gulf South that Blanchard would give Plaintiff instructions, which was demonstrated by Plaintiff's "little contact" with Gulf South while on the platform.[58]


### 4. Did the Employee Acquiesce in the New Work Situation?

According to Blanchard, this factor evaluates whether the employee had time to assess his new work situation and choose to continue working in those conditions.[59]  Blanchard notes that the Fifth Circuit held that one month was sufficient time for an employee to appreciate and acquiesce in his new work conditions,[60] and district courts have found periods shorter than one month to be sufficient.[61]  Blanchard asserts that "Plaintiff's actions during his approximately one month time on the platform show that he acquiesced in the new work situation."[62]  Plaintiff agrees with Blanchard that this factor weighs in favor of borrowed servant status, because Plaintiff claims he would have continued working on the platform until completion of the job if he had not been injured.[63]


### 5. Did the Original Employer Terminate His Relationship with the Employee?

Blanchard argues that this factor also weighs in favor of finding that Plaintiff was a borrowed employee, because the nominal employer does not have to completely sever its relationship with the employee.  Instead, the emphasis is on the lending employer's relationship with the employee while

---

[58] *Id.*

[59] Rec. Doc. 65-2 at p. 11.

[60] *Id.* (citing *Brown*, 984 F.2d at 678).

[61] *Id.*

[62] Rec. Doc. 65-2 at p. 12.

[63] Rec. Doc. 67 at p. 13.

the borrowing occurred.[64]  In support of this position, Blanchard cites *Allen v. Texaco, Inc.*,[65] where the court found that the nominal employer severed its relationship with the plaintiff because the nominal employer had no knowledge regarding the plaintiff's daily work performance and responsibilities, and the plaintiff received daily tasks from the borrowing employer.[66]  Like the plaintiff in *Allen*, Blanchard contends that Robertson's daily work was dictated by Blanchard rather than Gulf South, and Robertson had little contact with Gulf South that did not go through Blanchard.[67]

Plaintiff avers that Gulf South maintained significant contact and control over him while he worked on the platform, and, therefore, this factor weighs against a finding of borrowed servant status.  Plaintiff sets forth the following nine factors establishing the relationship between Plaintiff and Gulf South: (1) Gulf South set the time of Plaintiff's work hitch[68] on the platform, (2) if Plaintiff was unable to report for a work hitch, he would contact Gulf South; (3) Plaintiff's vacation time had to be approved by Gulf South; (4) Plaintiff's rate of pay and any pay raises were controlled by Gulf South; (5) Gulf South could reassign Plaintiff from the platform to another job location; (6) Plaintiff was notified of the time, date, location, and name of the crew boat which provided transportation to the platform by a Gulf South dispatcher; (7) a Gulf South foreman conducted a mandatory "job safety analysis" every morning; (8) Gulf South provides Plaintiff with compensation benefits; and

---

[64] Rec. Doc. 65-2 at p. 12 (citing *Capps*, 784 F.2d at 617-18).

[65] 2001 WL 611391.

[66] Rec. Doc. 65-2 at p. 13 (citing 2001 WL 6111391, at *6).

[67] *Id.* (citing Ex. C at p. 11, lns. 15-18).

[68] A "work hitch" refers to the days Plaintiff was scheduled to work, as opposed to the days he was off.

(9) a Gulf South incident report was completed following the July 17, 2010 accident.[69]  Of these

factors, Plaintiff argues that the fact that Blanchard did not provide Plaintiff's work assignments,

as he worked under the supervision of a Gulf South foreman, and the fact that Blanchard merely

identified the location where the scaffold was to be constructed are of particular importance in

finding that Plaintiff was not a borrowed employee.[70]

In reply, Blanchard first notes that Plaintiff relies on the same nine facts he relied on in

support of his earlier contention that there was no meeting of the minds between Gulf South and

Blanchard,[71] but Blanchard argues that these facts "speak more to the relationship with Gulf South

outside of the work he was performing while on the subject platform."[72]  Blanchard reiterates that

the focus is on Gulf South's relationship with Plaintiff while the borrowing occurs.[73]  Additionally,

Blanchard maintains that, contrary to Plaintiff's assertions in the opposition, Plaintiff's own

testimony indicates that he took his work assignments from Picard.[74]  Furthermore, Blanchard argues

that the Alonzo was not Plaintiff's supervisor, but "just a more senior scaffold builder."[75]  Blanchard

reasons that Plaintiff's limited contact with Gulf South while on the platform and Picard's

supervision and assignment of Plaintiff's work support a finding that Gulf South sufficiently

---

[69] Rec. Doc. 67 at pp. 13-14.

[70] *Id.* at p. 14.

[71] Rec. Doc. 73 at p. 7.

[72] Rec. Doc. 73 at p. 7. *Cf.* Rec. Doc. 67 at p. 12.

[73] *Id.*

[74] *Id.* (citing Blanchard's Motion for Summary Judgment, Ex. A at p. 40, lns. 6-8).

[75] *Id.* at p. 8.

terminated its relationship with Plaintiff.[76]

6.  <u>Who Furnished the Tools and Place for Performance?</u>

Blanchard argues that this factor overall weighs in favor of finding that Plaintiff was a borrowed employee, because it evaluates who furnished the place of performance, tools for the job, transportation to and from the work place, food and lodging.[77]  Although Blanchard did not provide Plaintiff with tools, Blanchard argues that, by virtue of its contract with Hilcorp, it provided the place of employment, all meals, transportation to and from the platform, and lodging on the platform.[78]  Therefore, Blanchard argues that this factor supports Plaintiff's status as a borrowed employee.

Plaintiff disputes Blanchard's contention that it should be credited with providing Plaintiff's place of employment, food, lodging and transportation because Hilcorp provided those necessities for performance of the job based on it's contract with Blanchard.  Instead, Plaintiff relies on Picard and Plaintiff's testimony in depositions that Blanchard did not provide Plaintiff with any tools or equipment, and that Hilcorp provided the place of employment, food, lodging and transportation. Plaintiff argues that this factor provides a neutral assessment in the case, because neither Gulf South nor Blanchard provided the necessities for performance of the job.[79]

Blanchard contends that Plaintiff overlooks the fact that only Blanchard had a contract with

---

[76] *Id.*

[77] Rec. Doc. 65-2 at p. 13 (citing *Melancon*, 834 F.2d at 1246).

[78] Rec. Doc. 65-2 at p. 14.

[79] Rec. Doc. 67 at pp. 14-15.

Hilcorp, and that Blanchard was the general contractor on the refurbishment contract.[80]  Blanchard reasons that it must logically follow that it was only through Blanchard's contractual relationship with Hilcorp that Plaintiff was provided with transportation, food, and lodging; and therefore, this factor favors borrowed servant status.[81]

### 7.  Was the Employment Over a Considerable Length of Time?

According to Blanchard, where the length of time is considerable, this factor supports a finding that the employee is a borrowed employee, but the factor is simply neutral if the length of time is not considerable.[82]  Blanchard further elaborates that the courts have not deemed a specific amount of time to be considerable, and courts have found as few as five days to support a finding of borrowed servant status or as long as a month to be neutral.[83]  Blanchard contends that this factor favors a finding that Plaintiff was a borrowed employee, because he was on the platform for "approximately one month or five weeks prior to his accident."[84]  Furthermore, Blanchard explains that Plaintiff's testimony that he had no plans of leaving the platform because there was a lot more work to be done when his accident occured indicates that he would have been under Blanchard's supervision for a period considerably longer than one month, but for his accident.[85]

Plaintiff argues that this factor is neutral in the analysis because Plaintiff worked on the

---

[80] Rec. Doc. 73 at p. 9.

[81] *Id.*

[82] Rec. Doc. 65-2 at p. 14 (citing *Melancon*, 834 F.2d at 1246; *Capps*, 784 F.2d at 618).

[83] *Id.* (citing *Brown*, 984 F.2d at 679).

[84] *Id.* (citing Ex. A at p. 39, lns. 9-11).

[85] *Id.*

platform for "as little as 2 weeks and as long as one month."[86]  Plaintiff submits that Blanchard

cannot rely on Plaintiff's intent to continue working on the platform had he not been injured to

establish a considerable length of time, because that logic would permit a finding that an employee

injured the on the first day of work spent a considerable length of time in the new work situation.[87]


8.  Who Had the Right to Discharge the Employee?

The parties agree that Picard, the Blanchard supervisor, had the authority to remove Plaintiff

from the platform if he was not satisfied with Plaintiff's work.[88]  Therefore, Plaintiff does not contest

that this factor weighs in favor of finding that Plaintiff was a borrowed employee.


9.  Who Had the Obligation to Pay the Employee?

The parties agree that Fifth Circuit precedent states that any arrangement whereby a nominal

employer is reimbursed by the purported borrowing employer for the services of the employee

favors a finding of borrowed servant status.  The parties explain that in this case Blanchard paid Gulf

South for Plaintiff's services based on timesheets Plaintiff submitted to Blanchard, and Gulf South

in turn paid Plaintiff.  Therefore, the parties agree that this factor favors borrowed servant status.[89]

---

[86] Rec. Doc. 67 at p. 15 (citing Picard Dep., Ex. C at p. 54, lns. 20-22).

[87] *Id.*

[88] Rec. Doc. 65-2 at p. 15; Rec. Doc. 67 at pp. 15-16.

[89] Rec. Doc. 65-2 at p. 16; Rec. Doc. 67 at p. 16.

### III.  Law and Analysis

*A.  Standard on Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[90]  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[91]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[92]  If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[93]

If, as here, the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[94]  At that time, the burden shifts to the nonmoving party, who must, by submitting or

---

[90] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[91] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[92] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[93] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[94] *See Celotex*, 477 U.S. at 325.

referring to evidence, set out specific facts showing that a genuine issue exists.[95]  The nonmoving

party may not rest upon the pleadings, but must identify specific facts that establish a genuine issue

for trial.[96]


### B.  Choice of Law

Plaintiff's complaint alleges that his injury occurred on a fixed platform on the Outer

Continental Shelf in the Gulf of Mexico.  When a cause of action arises on a fixed platform located

on the Outer Continental Shelf, the OCSLA governs the action, thereby conferring federal question

jurisdiction on this Court pursuant to 28 U.S.C. § 1331.  The OCSLA provides that the law of the

state adjacent to the controversy is applicable to the extent that it is not inconsistent with other

federal laws and regulations.[97]  Plaintiff's injury allegedly occurred on a block of the Outer

Continental Shelf that is adjacent to Louisiana.  The parties have not cited any reason why applying

Louisiana negligence principles would be inconsistent with other federal laws and regulations.

Therefore, this Court will apply Louisiana law.


### C.  Negligence Under Louisiana Civil Code Article 2315

Under article 2315 of the Louisiana Civil Code, "[e]very act whatever of man that causes

---

[95] *See id.* at 324.

[96] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

[97] 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969); *see also Dickerson v. Continental Oil Co.*, 449 F.2d 1209, 1213 (5th Cir. 1971) (noting that fixed platforms on the Outer Continental shelf are artificial islands to be treated as "federal enclaves within a state" and are governed by the Outer Continental Shelf Lands Act) (citing *Rodrigue*, 395 U.S. 352).

damage to another obliges him by whose fault it happened to repair it."[98]   That is, "where circumstances create a duty to do so, the defendant must use reasonable care so as to avoid injuring another person."[99]   Therefore, all individuals have a duty "to avoid acts and omissions which engender an unreasonable risk of harm to others"[100] and "[t]he parameters of what constitutes fault in Louisiana reach far and wide in order to hold people accountable for their harmful actions regardless of whether or not their actions are covered by a [specific] statutory provision."[101]

To determine whether to impose liability under this general negligence statute, Louisiana courts conduct a duty-risk analysis.[102]   To establish liability, five elements must be proven: (1) the defendant owed a duty to conform his conduct to a specific standard (duty element); (2) the defendant's conduct failed to conform to the appropriate standard (breach element); (3) the defendant's substandard conduct caused the plaintiff's injuries (cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (scope of liability or scope of protection element); and (5) the plaintiff suffered damages as a result (damages element).[103]

Although the questions of breach and causation are fact-driven inquiries typically left to the

---

[98] La. C.C. art. 2315.

[99] *Tardo v. Autozone Stores, Inc.*, No. 10-3642, 2011 WL 4345064, at * 2 (E.D. La. Sept. 15, 2011) (Feldman, J.).

[100] *Stephens v. State Through Dep't of Transp. & Dev.*, 440 So.2d 920, 925 (La. App. 2 Cir. 1983), *writ denied*, 443 So.3d 1119 (La. 1984); *see also Seals v. Morris*, 410 So.2d 715, 718 (La. 1981) ("In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances.") (citations omitted).

[101] *Bethea v. Modern Biomedical Servs., Inc.*, 704 So.2d 1227, 1233 (La. App. 3 Cir. 1997), *writ denied*, 709 So.2d 760 (La. 1998).

[102] *Lemann v. Essen Lane Daquiris, Inc.*, 923 So.2d 627, 632-33 (La. 2006).

[103] *Westchester Fire Ins. Co. v. Haspel-Kansas Inv. P'ship*, 342 F.3d 416, 419 (5th Cir. 2003) (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 816 So.2d 270, 275-76 (La. 2002)); *Lemann*, 923 So.2d at 633.

fact-finder,[104] the question of whether a duty is owed, as well as the scope of that duty, is a question of law.[105] Summary judgment is proper "only where no duty exists as a matter of law and no factual or credibility disputes exist."[106]

Here, Blanchard argues that it owed Plaintiff no duty because Blanchard was not tasked with maintaining the safety of the scaffolding.[107] However, by this argument, Blanchard fails to consider that this is not the duty that Plaintiff alleges Blanchard violated. Instead, Plaintiff contends that Blanchard had a duty under the Louisiana general negligence statute to conduct its work in a reasonably safe manner, which Plaintiff alleges was violated when Blanchard created an unreasonable risk of harm by allowing a slippery substance consisting of detergent and oil to fall onto the handrails of the scaffolding making Plaintiff unable to break his fall by grabbing the handrail. On this motion for summary judgment, the facts must be taken in the light most favorable to Plaintiff, who has provided sworn testimony as evidence that Blanchard employees were cleaning the pipe directly overhead of Plaintiff at the time of the incident and that Plaintiff was unable to break his fall because the Blanchard employees allowed a mixture of detergent and oil to fall on the handrail below.[108] Assuming these facts as true for the purpose of this motion, it is not implausible that Blanchard employees were working in the area at the time of the incident, such that under the Louisiana Civil Code, they would have had a duty to conduct their work in a reasonably safe manner

---

[104] *Brewer v. J.B. Hunt Transp., Inc.*, 35 So.3d 230, 240 (La. 2010); *Bridgefield Cas. Ins. Co. v. J.E.S., Inc.*, 29 So.3d 570, 574-575 (La. App. 1 Cir. 2009).

[105] *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1196 (5th Cir. 1992); *Brewer*, 35 So.3d at 240.

[106] *Parish v. L.M. Daigle Oil Co.*, 742 So.2d 18, 25 (La. App. 3 Cir. 1999).

[107] Rec. Doc. 65-2 at p. 6.

[108] *See* Robertson Dep., Rec. Doc. 67-3 at pp. 14, 17-18, 81-82.

so as to "avoid acts and omissions which engender an unreasonable risk of harm to others."[109]

At this time, the Court need not consider whether there was a breach of Blanchard's duty, because neither party has sought summary judgment as to the other elements of a negligence claim, and the question of breach is a factual one to be left to the fact-finder, here the jury.[110]  Likewise, the Court need not consider whether any breach of such duty caused the accident in question. Instead, this motion presents only the question of whether Blanchard owed Plaintiff a duty, and, as a matter of law, under Louisiana Civil Code article 2315, the Court finds that Blanchard had a duty to perform its work in a reasonably safe manner.

### D. Borrowed Servant Status

The OCSLA, 43 U.S.C. § 1333, *et seq.*, applies to Plaintiff's action because he was injured on a platform located on the Outer Continental Shelf, off the Louisiana coast.  The OCSLA provides that the LHWCA, 33 U.S.C. §§ 901-950, regulates the right to compensation of an injured platform worker.[111]  Specifically, the LHWCA prevents an employee from bringing a tort action against his employer, thereby limiting the injured employee to workers' compensation as an exclusive remedy against the employer.[112]  The Fifth Circuit has extended this immunity from tort action to borrowing employers under the "borrowed employee" doctrine.[113]  Accordingly, if Plaintiff is found to be a borrowed employee, Blanchard, as the borrowing employer, is immune from Plaintiff's negligence

---

[109] *Stephens*, 440 So.2d at 925.

[110] Defendants have demanded a jury.

[111] 43 U.S.C. § 1333(b).

[112] *See* 33 U.S.C. §§ 904(a), 905(a).

[113] *See Melancon*, 834 F.2d at 1243-44.

claims.

Whether Plaintiff is a borrowed employee is an issue of law for the Court to determine,[114] however there are nine separate factual inquiries underlying "borrowed employee" status.[115] If these factual inquiries involve a genuine factual dispute, those factors must be submitted to the jury, unless a "preponderance of other factual matters are not in dispute."[111] The Fifth Circuit has outlined the following nine factors to be evaluated in determining whether an employee is to be considered a borrowed employee of another:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
> (2) Whose work is being performed?
> (3) Was there an agreement, understanding or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce in the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished tools and place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?[112]

Although none of these factors or any particular combination of these factors is determinative, the first factor (*i.e.* the question of who has control over the employee and the work) has been a factor of central importance in some Fifth Circuit cases.[113]

---

[114] *Capps*, 784 F.2d at 617 (citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357-58 (5th Cir. 1977)).

[115] *Melancon*, 834 F.2d at 1244.

[111] *Gaudet*, 562 F.2d at 358; *see also Barrios v. Freeport-McMoran Resource Partners, LP,* Nos. 93-0092, 93-0425, 1994 WL 90456 (E.D. La. Mar. 11, 1994) (Livaudais, J.).

[112] *Melancon*, 834 F.2d at 1244.

[113] *Melancon*, 834 F.2d at 1244-45 (citing *Hebron v. Union Oil Co. of California*, 634 F.2d 245, 247 (5th Cir. Unit A Jan. 1981)).  *See also Brown*, 984 F.2d at 676-77 ("[I]n many of [the Fifth Circuit's] prior cases, [the court] has considered the first factor–control–to be the central factor."); *Capps*, 784 F.2d at 617 (noting that the first factor is "the most important.").

1. <u>Who Had Control of the Employee?</u>

In evaluating whether the borrowing employer, Blanchard, controlled and directed Plaintiff's work, "a careful distinction must be made between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."[114]  In *Melancon*, the plaintiff had specialized welding skills, and the Fifth Circuit clarified that such expertise will not bar a finding of borrowed employee status, where the borrowing employer had no expertise in the area.[115]  The Fifth Circuit based its conclusion on the fact that the borrowing employer could tell the plaintiff when to do the welding work and other kinds of work and what welding to do, even though the plaintiff could choose the manner in which to do his welding work according to his own professional judgment.[116]

In the instant case, Plaintiff could also choose the manner in which to build the scaffolding, as that was within his area of expertise, but there are material facts in dispute as to whether Picard, the Blanchard supervisor, assigned other types of work to Plaintiff and whether it was Picard or the other Gulf South employee, Alonzo, who supervised Plaintiff.  Notably, in *Brown*, the Fifth Circuit reversed the district court on the basis of disputed issues of fact as to who controlled the employee and whether there as an agreement or understanding between the borrowing and nominal employer, stating that those factual determinations "should not have been taken from the jury."[118]  Likewise,

---

[114] *Ruiz*, 413 F.2d at 313.

[115] *Melancon*, 834 at 1245.

[116]*Id.* at 1241.

[118] *See Melancon*, 834 F.2d at 1245 ("It is irrelevant that [plaintiff's] primary job was welding, which was an essential, although only incidental, aspect of [the oil company's] business."); *Hitt*, No. 92-2954, 1993 WL 488570, at *4  (E.D. La. Nov. 22, 1993) (Livaudais, J.).

the factual determination of who controlled Plaintiff's work in this case should be decided by the fact-finder unless the other factors overwhelmingly support Plaintiff's borrowed employee status.

2. Whose Work Was Being Performed?

Plaintiff was performing Blanchard's work. The fact that Gulf South was in the business of scaffolding is not relevant to the determination that building the scaffolding was an essential part of Blanchard's platform refurbishment project.[119] Therefore, this factor favors a finding of borrowed servant status.

3. Was There an Agreement, Understanding, or Meeting of the Minds Between Gulf South and Blanchard?

Absent a written contract,[120] this factor favors borrowed employee status if there was a meeting of the minds between Blanchard and Gulf South that Plaintiff would be taking instructions from Blanchard.[121] In *Brown*, the Fifth Circuit found that there existed factual disputes that should be determined by the fact-finder when the plaintiff presented evidence that the defendant did not treat him as an employee.[122] Here, the factual disputes regarding the extent of Picard's supervision of and assignment of work to Plaintiff, which were relevant to the first factor, are also relevant to whether

_____

[119] *See Melancon*, 834 F.2d at 1245 ("It is irrelevant that [plaintiff's] primary job was welding, which was an essential, although only incidental, aspect of [the oil company's] business."); *Hitt*, No. 92-2954, 1993 WL 488570, at *4 (E.D. La. Nov. 22, 1993) (Livaudais, J.).

[120] *See Ruiz*, 413 F.2d at 313 ("A formal agreement between the two employers is not considered indispensable to the borrowed-servant relationship").

[121] *Melancon*, 834 F.2d at 1245.

[122] 984 F.2d at 674.

25

there was an expectation that Plaintiff would be receiving instructions from Blanchard.[123] Therefore, the jury should determine whether there was a meeting of the minds between Blanchard and Gulf South.

4. <u>Did the Employee Acquiesce in the New Work Situation?</u>

The issue to be resolved under this factor is whether Plaintiff had an opportunity to observe the conditions under which he was working and whether, after such an opportunity he chose to continue working.[124] The parties agree that Plaintiff acquiesced to the new work situation, and the evidence supports a finding that this factor favors borrowed employee status.[125]

5. <u>Did the Original Employer Terminate His Relationship with the Employee?</u>

This factor does not require a lending employer to completely sever his relationship with the employee, because such requirement would effectively obliterate the borrowed employee doctrine.[126] Instead, this factor evaluates the lending employer's relationship with the lending employee *while the borrowing occurs*.[127] Plaintiff relies on a number of facts to demonstrate that Gulf South did not terminate its relationship with Plaintiff, but many of these facts only support a determination that

---

[123] *See Barrios*, 1994 WL 90456, at * 3 (explaining that who had control of the Plaintiff was a disputed material issue of fact that was also relevant to the court's determination as to whether the contractor and the platform owner had an agreement that the worker would be a borrowed employee).

[124] *Brown*, 984 F.2d at 678.

[125] Robertson Dep., Rec. Doc. 67; Ex. B at p. 43, lns 13-15.

[126] *Melancon*, 834 F.2d at 1246 (citing *Capps*, 784 F.2d at 617-18).

[127] *Capps*, 784 F.2d at 617-18 (emphasis added).

Gulf South maintained a relationship with Plaintiff when he was not on the platform.[128] Instead, the emphasis should be on Plaintiff's relationship with Gulf South while he was working on the platform. Plaintiff claims that if he could not make a work hitch he would contact Gulf South, that a Gulf South foreman conducted a job safety analysis every morning, and that a Gulf South incident report was completed following the accident. However, Blanchard presents contrary evidence that Plaintiff would notify Picard if he could not make a work hitch and that the job safety analysis was conducted by Plaintiff's co-worker, who was merely a more senior scaffold builder, not a supervisor. This disputed issue of fact should be decided by a jury, as both parties have presented contradictory evidence.

6. Who Furnished the Tools and the Place of Performance?

This factor emphasizes whether the borrowing or the lending employer furnished Plaintiff's tools, place of performance, and other necessities, such as food, lodging, and transportation.[129] In *Melancon*, the Fifth Circuit affirmed the district court's finding that this factor favored borrowed employee status even when the lending employer furnished the welding equipment, because the borrowing employer furnished the place of employment, transportation, food, and lodging.[130] Similarly, in the pending case, Blanchard did not furnish the tools or equipment necessary to build the scaffolding, but Blanchard did provide, through its contract with Hilcorp, the platform,

---

[128] Rec. Doc. 67 at pp. 13-14 (noting that Gulf South scheduled Plaintiff's days off, approved vacation time, approved rate of pay and any pay increases, notified Plaintiff of the time, date, location and name of the crew boat providing transportation to the platform, and provided compensation benefits).

[129] *See Melancon*, 834 F.2d at 1246 (evaluating who provided the tools, place of performance, consumables, transportation to and from work, and lodging).

[130] *Id.*

transportation, food, and lodging. Plaintiff argues, without citing any authority, that this factor should be neutral because Hilcorp, not Blanchard, furnished the place of performance, lodging, food, and transportation. In evaluating whether Plaintiff is a borrowed employee, the emphasis is on the relationship with the borrowing employer versus the lending employer. Clearly, here, Gulf South did not provide the platform, food, lodging, or transportation. Hilcorp provided the place of performance, meals, lodging and transportation to and from the platform to Blanchard, and, by extension, to Plaintiff, based on Hilcorp's contract with Blanchard. Therefore, this factor weighs in favor of finding borrowed employee status because Plaintiff, like other Blanchard employees, received meals, lodging, and transportation to and from the platform from Hilcorp.

7. <u>Was the New Employment Over a Considerable Length of Time?</u>

"Where the length of time the employee has worked for the borrowing employer is considerable this factor is significant and supports a finding that the employee was a borrowed employee[,]" but if the employment is not for a considerable length of time, this factor is neutral.[131] In *Capps*, the Fifth Circuit found that this factor was neutral when the employee only worked in the new work situation for three days; however, the court noted that it had "previously affirmed a finding of borrowed employee status when the employee's injury occurred on the first day of the job."[132] Plaintiff had worked on the platform approximately one month prior to his accident. Although there is no set amount of time that will be deemed considerable, the Fifth Circuit found that this factor was

---

[131] *Foreman*, 97-2038, p. 8 (La. App. 1Cir. 9/25/98); 722 So.2d 1, 7; *see also Capps*, 784 F.2d at 618.

[132] 784 F.2d at 618 (citing *Champagne v. Penrod Drilling Co.*, 341 F.Supp. 1282, 1284 (W.D. La. 1971), *aff'd per curiam*, 459 F.2d 1042 (5th Cir. 1972).

neutral when the employee was on the platform for one month prior to his accident.[133]  In light of the Fifth Circuit's finding in *Capps*, it is appropriate here to find that this factor is neutral here, because Plaintiff was working on the platform for one month prior to his accident.

8.  Who Had the Right to Discharge the Employee?

Fifth Circuit precedent has stated that the proper focus when considering who has the right to discharge the employee is whether the borrowing employer has the right to terminate the borrowed employee's services; the issue is not whether the borrowing employer could discharge the employee from the lending employer.[134]  The parties agree that Blanchard, through its supervisor Picard, had the right to terminate Plaintiff's services and have him removed from the platform if Picard felt that Plaintiff's work was unsatisfactory.  Therefore, this factor favors finding Plaintiff to be a borrowed employee.

9.  Who Had the Obligation to Pay the Employee?

It is clear that an arrangement whereby the lending employee pays the employee and is reimbursed by the borrowing employer for the wages supports a finding of borrowed employee status.[135]  Here, Picard signed Plaintiff's time tickets and Blanchard paid Gulf South, who in turn paid Plaintiff.  This arrangement, as the parties both recognize, favors a finding of borrowed employee status.

---

[133] *Brown*, 984 F.2d at 679.

[134] *Capps*, 784 F.2d at 618.

[135] *See Capps*, 784 F.2d at 618; *see also Brown*, 984 F.2d at 679 (finding that this factor favors finding borrowed employee status where the borrowing employer must verify the employee's time tickets).

With respect to the question of whether he is a borrowed employee of Blanchard, Plaintiff has raised a genuine issue of material fact under three of the factors: (1) who had control over the employee; (2) whether there was a meeting of the minds between Blanchard and Gulf South; and (3) whether Gulf South terminated its relationship with Plaintiff. While none of the factors or any specific combination thereof is decisive, Fifth Circuit precedent has recognized the importance of the first two of these in the resolution of the borrowed employee question.[136] Thus, even though the numerical majority (five) of the nine factors supports borrowed employee status, the existence of factual disputes relating to the factors found by the Fifth Circuit to be centrally important warrants the denial of summary judgment.

### III. Conclusion

In conclusion, Blanchard's motion for summary judgment will be denied for two reasons. First, under Louisiana law, the question of whether a duty exists is a question of law properly decided by the court. Louisiana law provides for a general duty of reasonable care, and Plaintiff has put forth evidence to demonstrate that Blanchard was working in the area at the time of the incident. Therefore, Blanchard had a duty to conduct its work in a reasonably safe manner, and Plaintiff should be allowed to present evidence to determine if that duty was breached and if any such breach was negligent. This Court finds that Blanchard has not carried its summary judgment burden to demonstrate that there is no disputed issue of material fact regarding Plaintiff's negligence claim because Blanchard has only argued that it owed no duty to Plaintiff, and the record supports a finding that Blanchard did owe Plaintiff a duty.

---

[136] *See Melancon*, 834 F.2d at 1245; *Hebron*, 634 F.2d at 247; *West*, 765 F.2d at 531; *Capps*, 784 F.2d at 617; *Ruiz*, 413 F.2d at 312-13.

Second, this Court finds that Blanchard has failed to demonstrate that there is no genuine issue of material fact that Plaintiff was a borrowed employee of Blanchard. Whether Plaintiff is a borrowed employee is a matter of law for the Court to decide, but summary judgment on this basis is inappropriate where, as here, factual disputes must be resolved in order to determine whether Plaintiff is a borrowed employee. Accordingly,

**IT IS HEREBY ORDERED** that Blanchard's Motion for Summary Judgment[137] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this <u>12th</u> day of December, 2012.

_Nannette Jolivette Brown_

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[137] Rec. Doc. 47.